## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JUSTIN BURTON LANE,**

     **Plaintiff,**

**v.**                    **CASE NO.: 8:19-cv-1836-VMC-AAS**

**J. BATCHELOR,** *et al.,*

     **Defendant.**
_____/

### ORDER

     This cause is before the Court on Defendants' Motion to Dismiss Complaint, filed under Rule 12(b)(6), Federal Rules of Civil Procedure. (Doc. 27). Upon consideration, the Court **ORDERS** that the Motion to Dismiss is **GRANTED** and the complaint (Doc. 1) be **DISMISSED**.

### Factual Background

     Plaintiff initiated this action on July 26, 2019, by filing a civil rights complaint under 42 U.S.C. § 1983. (Doc. 1). According to the complaint, on July 13, 2017, while incarcerated at the Zephyrhills Correctional Institution ("Zephyrhills C.I."), Plaintiff indicated to Defendant Batchelor, a correctional officer employed by the Florida Department of Corrections ("FDOC"), that he was having a psychological emergency. (Id. at 8). Batchelor left and did not immediately return with assistance. (Id.). After approximately 30 minutes passed, Plaintiff had not received any medical assistance, so Plaintiff covered the CCTV monitor with toilet paper and informed his cellmate he was going under his bunk to feel calm. (Id. at 8-9). Plaintiff remained under his bunk for approximately ten minutes until Batchelor

1

returned and asked Plaintiff what he was doing. (Id. at 9). Plaintiff, again, declared he was having a psychological emergency and needed a mental health professional. (Id.). Batchelor removed Plaintiff's cellmate from the cell and sent Defendant Turner and several other staff members into the cell. (Id.).

To remove Plaintiff from under the bunk, Defendant Turner used both hands to grab and twist Plaintiff's left ankle, causing pain in his ankle, left knee, and lower back. (Id.). While holding Plaintiff's left ankle, Turner slammed Plaintiff's left thigh into the bottom of the bunk. (Id.). Defendant Ross grabbed Plaintiff's right ankle and assisted Turner in pulling Plaintiff out from under the bunk. (Id. at 10). Plaintiff claims he was not disruptive, disorderly, or combative at any time. (Id.).

After pulling Plaintiff from under the bed, Plaintiff was rolled on his stomach and placed in restraints. (Id.). Plaintiff was then lifted from the floor and placed in a time-out cell, alone, and was not seen by a mental health professional. (Id.). Plaintiff was then moved to another cell, where he declared another mental health emergency and was subsequently placed on suicide watch. (Id.). Plaintiff also alleges he was transferred to another institution to prevent him from filing grievances against the parties involved. (Id.). Similarly, Plaintiff alleges that Defendants retaliated against him for earlier grievances by filing false disciplinary reports against him, taunting him, and through the July 13, 2017, use of force. (Id.).

Plaintiff alleges he suffered from nightmares, bruises, and pain in his ankle, knee, thigh, and lower back for weeks after the incident. (Id. at 11). Plaintiff also alleges he "was diagnosed with severe PTSD, anxiety, manic depression, paranoia, schizophrenia, and numerous other serious mental issues, prior [to] and after the use of force." (Id.). Plaintiff

claims Defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution when they retaliated for his prior grievances by using excessive force and when they retaliated against him for his grievance-filing by other means. (Id. at 8, 12). He also claims that Batchelor was deliberately indifferent to his serious medical needs. (Id. at 12).

In May 2020, after undertaking the initial review required by 28 U.S.C. § 1915A, the Court permitted this case to proceed on Plaintiff's claims of excessive force and retaliation against Defendants Ross and Turner and Plaintiff's claim of deliberate indifference against Defendant Batchelor. (Doc. 8 at 7). All other claims were dismissed. (Id.). Plaintiff did not further amend his complaint.  Defendants Batchelor, Ross, and Turner have now filed a Motion to Dismiss. (Doc. 27). Plaintiff has responded (Doc. 33), and the Motion is ripe for review.

## Standard of Review

A pro se complaint is entitled to a generous interpretation. Haines v. Kerner, 404 U.S. 519, 520 (1972). Under a Rule 12(b)(6) motion to dismiss, a court must accept the allegations in the complaint as true and construe the alleged facts, and all reasonable inferences, in the light most favorable to the plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Omar ex rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003).

Rule 12(b)(6) requires a complaint to "state a claim upon which relief can be granted" or the complaint will be subject to dismissal. To survive a motion to dismiss, the factual allegations and reasonable inferences must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). More specifically, the complaint must

contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 544). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and pleadings that only offer "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

The "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. "Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003). If a court cannot "infer more than the mere possibility of misconduct," the complaint does not show entitlement to relief. Iqbal, 556 U.S. at 679. Accordingly, more than conclusory and vague allegations are required to state a cause of action under Section 1983. Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984).

## Discussion

### I.   Exhaustion of Administrative Remedies

Defendants argue that the complaint should be dismissed because Plaintiff has failed to exhaust available administrative remedies. (Doc. 27 at 5-13). Under the Prison Litigation Reform Act ("PLRA"), prisoners must properly exhaust all available administrative remedies before bringing a suit under Section 1983. 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 84 (2006). Exhaustion of administrative remedies is mandatory and is a precondition to filing suit. Wilkinson v. Dotson, 544 U.S. 74, 84 (2005).

The Eleventh Circuit outlines a two-step process for a district court deciding a motion to dismiss for failure to exhaust administrative remedies. Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). First, a court must compare a defendant's factual allegations in the motion to dismiss and those in an inmate's response and, if they conflict, accept the plaintiff's version as true. Id. A court should only dismiss the complaint at that step if a plaintiff's factual allegations show the plaintiff failed to exhaust administrative remedies. Id. Second, if not dismissed at the first step, a court must make specific findings to resolve disputes of fact related to exhaustion and may dismiss if the defendant has shown the plaintiff failed to exhaust administrative remedies. Id. at 1082-83. A defendant bears the burden of showing a failure to exhaust. Id. at 1082.

"Proper exhaustion" of administrative remedies is required under the PLRA. Woodford, 548 U.S. at 93. Proper exhaustion of administrative remedies includes complying with an agency's procedures, deadlines, and any other relevant procedural rules. Id. at 90-91; Halpin v. Crist, 405 F. App'x 403, 407 (11th Cir. 2010) ("In order to exhaust, the inmate must comply with all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits." (internal quotation marks omitted)). Untimely grievances do not satisfy the exhaustion requirement of the PLRA. Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005).

Florida has a three-step process to exhaust administrative procedures. Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 202 (11th Cir. 2018) (setting forth the three-step process).  First, an inmate must file an informal grievance. Fla. Admin. Code § 33-103.005. An informal grievance must be received within 20 days of the alleged incident. Fla. Admin.

Code § 33-103.011(1)(a). Next, if the informal grievance is denied, an inmate must file a formal grievance at the institutional level. Fla. Admin. Code § 33-103.006. A formal grievance must be received within 15 days after the denial of the informal grievance. Fla. Admin. Code § 33-103.011(1)(b). Finally, if the formal grievance is denied, an inmate must file an appeal to the Office of the Secretary, Florida Department of Corrections. Fla. Admin. Code § 33-103.007.  An appeal must be received by the Office of the Secretary within 15 days of the receipt of the formal grievance denial. Fla. Admin. Code § 33-103.011(1)(c).

## A.    Whether Plaintiff has exhausted his administrative remedies

Turning to Plaintiff's exhaustion efforts here, Defendants allege in their Motion that Plaintiff did not exhaust his administrative remedies. (Doc. 27 at 5-13). In response, Plaintiff argues he exhausted all available administrative remedies or that administrative remedies were unavailable to him. (Doc. 33 at 8-13). Given the parties' conflicting accounts, and accepting the Plaintiff's version as true, the Court will move on to the second step in the PLRA exhaustion analysis. See Turner, 541 F.3d at 1082.

At the second step, the court must make specific findings to resolve disputes of fact related to exhaustion. Id. In the Eleventh Circuit, failure to exhaust administrative remedies is an affirmative defense and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374-1375 (11th Cir. 2008). A district court may properly consider facts outside the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not go to the merits of the case and the parties had an opportunity to develop the record. Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009). Both Plaintiff and Defendants have

submitted documentation pertaining to the exhaustion question. The Court's review of the pertinent documents demonstrates the following:

On July 19, 2017, Plaintiff submitted Informal Grievance Log No. 573-1707-0102, which pertained to the July 13, 2017, incident. (Doc. 27-3 at 4-5). This informal grievance was referred to the Inspector General's Office and was also denied. (Id. at 4). The response stated that Plaintiff was "hiding under [his] bunk being unresponsive, and would not respond to staff or move. To ensure [his] safety staff had to remove [him] from under the bunk." (Id.). The response concluded that all use of force was lawful. (Id.). Although this initial informal grievance was timely, the record does not demonstrate that Plaintiff thereafter filed a formal grievance with the institution in a timely manner, as required by Fla. Admin. Code § 33-103.006. Thus, Informal Grievance Log No. 573-1707-0102 is insufficient to properly exhaust Plaintiff's administrative remedies. See Eslow v. Sec'y, DOC, No. 2:19-cv-313-TB-NPM, 2020 WL 3073769, at *2 (M.D. Fla. June 10, 2020) (finding inadequate exhaustion where plaintiff failed to properly and timely file appropriate appeals under the FDOC's grievance procedures).

Moreover, the fact that the matter was referred to the Inspector General's Office did not absolve Plaintiff of his obligation to follow the applicable exhaustion procedures. See Hope v. Walker, No. 5:13-cv-362/WS/CJK, 2015 WL 5190435, at *5 (N.D. Fla. Aug. 18, 2015), report and recommendation adopted, No. 5:13-cv-362-WS, 2015 WL 5190615 (N.D. Fla. Sept. 4, 2015) ("[T]he referral of plaintiff's allegations to the Inspector General's Office does not eliminate the requirement that he exhaust his administrative remedies."); Fogle v. Landrum, No. 2:06-cv-278-JES-DNF, 2007 WL 1831791, at *3 (M.D. Fla. June 25, 2007)

(holding that plaintiff did not exhaust his administrative remedies when he failed to appeal a grievance that was referred to the Office of the Inspector General).

Plaintiff filed Formal Grievance Log No. 1711-102-109, which related to the July 2017 incident[1], but that grievance was not filed until November 12, 2017. (Doc. 27-5 at 29-30). Thus, it was not filed within 15 days of the July 26, 2017, denial of Informal Grievance Log No. 573-1707-0102, as required by the Florida Administrative Code. See Fla. Admin. Code § 33-103.011(1)(b); (Doc. 27-3 at 4). Formal Grievance Log No. 1711-102-109 was returned without processing because Plaintiff's allegations had already been forwarded to the Inspector General's Office. (Doc. 27-5 at 28). Plaintiff appealed the denial of Formal Grievance Log No. 1711-102-109 (Appeal No. 17-6-49729), which was also returned without action. (Id. at 27-26). Grievances returned without action do not exhaust a plaintiff's administrative remedies. See Arias v. Perez, 758 F. App'x 978, 881 (11th Cir. 2019).

Plaintiff filed Informal Grievance Log No. 102-1710-0365, which pertained to the July 2017 incident, on October 26, 2017. (Doc. 1-2 at 1-3). This grievance was returned as untimely. (Id. at 1). Informal Grievance Log No. 102-1710-0365 was not filed within 20 days of the July 2017 incident and, therefore, it is insufficient to exhaust Plaintiff's administrative remedies. Fla. Admin. Code § 33-103.011(1)(a); see also Johnson, 418 F.3d at 1157 (explaining that untimely grievances do not satisfy the exhaustion requirement of the PLRA).

---

[1] While many of the grievances state that Defendants' alleged deliberate indifference and excessive use of force occurred on July 20, 2017, the complaint alleges that it occurred on July 13, 2017. This discrepancy makes no material difference to the Court's analysis. Similarly, many of the grievances fail to address Plaintiff's retaliation claims. But because the Court finds that none of Plaintiff's grievances properly complied with the applicable state procedures, it need not distinguish which claims were made in which grievance.

The record also indicates that Plaintiff filed three additional grievances in between July 1, 2017 and August 1, 2017, when he was transferred from Zephyrhills C.I. to Santa Rosa Correctional Institution: (1) Formal Grievance Log No. 1707-573-047; (2) Informal Grievance Log No. 573-1707-0101; and (3) Informal Grievance Log No. 573-1707-0128, none of which pertain to the July 2017 use-of-force incident. (Doc. 27-3 at 6-16). Similarly, while Plaintiff filed four grievance appeals between July 1, 2017, and July 31, 2019, only one of them (Appeal No. 17-6-49729) related to the use-of-force incident at issue here and that appeal, as discussed above, was returned without action. (Doc. 27-5). Thus, the record demonstrates that Plaintiff failed to properly exhaust his administrative remedies with respect to the incident at issue in this litigation.

**B.**     **Whether administrative remedies were unavailable to Plaintiff**

Reading his response to the Motion to Dismiss liberally, Plaintiff argues that he should be excused from the exhaustion requirement because administrative remedies were unavailable to him. (Doc. 33 at 3, 8-13).

There is a recognized exception to the exhaustion requirement when an inmate's administrative remedies are unavailable. Turner, 541 F.3d at 1084 ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."). A remedy is unavailable if: (1) the administrative remedy is "a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use . . . [and] no ordinary prisoner can discern or navigate it;" or (3) prison officials "thwart inmates from taking advantage of a grievance process through machination,

misrepresentation, or intimidation." Ross v. Blake, 578 U.S. 1174, 136 S. Ct. 1850, 1859-60 195 (2016).

Here, Plaintiff advances several arguments for why his administrative remedies were unavailable. Specifically, Plaintiff claims that he appealed the denial of Informal Grievance Log No. 573-1707-0102 on a formal grievance document but he did not receive any response, nor did he receive his grievance back. (Doc. 33 at 8). According to Plaintiff's response, and the declaration he submitted in support thereof, Plaintiff thereafter filed "numerous grievances, grieving the loss of Log # 573-1707-0102, but [he] received nothing in response to those grievances either." (Id.; Doc. 33-1 at 7). Plaintiff claims that prison staff took his property and "when it was finally given [back], all his grievances were gone." (Doc. 33 at 10-11; Doc. 33-1 at 7). Therefore, because his grievances were lost and/or destroyed due to "constant transfers, cell searches, and harassment by [prison] staff," Plaintiff submits that he started the process all over again on November 12, 2017, with the filing of Formal Grievance Log No. 1711-102-109. (Doc. 33 at 11). After waiting a month for a response to this formal grievance, Plaintiff claims that he then filed appeal No. 17-6-49729, which he claims was "detoured" by the warden and returned without action. (Id. at 12; Doc. 33-1 at 7). He then filed three more grievances between November 2017 and April 2018 "without receiving any receipts or returned grievance[s]." (Doc. 33 at 12).

District courts must use the two-step Turner analysis when addressing the availability of the grievance process. Jenkins v. Sloan, 826 F. App'x 833, 839 (11th Cir. 2020). Taking Plaintiff's version of the facts as true, the Court finds it necessary to proceed to step two of the Turner analysis. First, the Court notes that three FDOC employees submitted declarations in

this case averring that: (1) Plaintiff submitted only four grievances to Zephyrhills C.I. between July 1, 2017, and August 1, 2017, when he was transferred to Santa Rosa Correctional Institution, all of which are described by this Order; (2) an FDOC official specifically searched in Plaintiff's "classification file" – a document that follows the inmate from facility to facility while they are in custody, is thereafter maintained by the FDOC after an inmate's release, and contains true and correct copies of all grievances filed by an inmate – for copies of any formal grievances filed between August 1, 2017 and October 18, 2017 relating to the denial of Informal Grievance Log No. 573-1707-0102 and found no such record; and (3) according to records kept by the FDOC's Central Office, Plaintiff filed four grievance appeals between July 1, 2017 and July 31, 2019, only one of which (Appeal No. 17-6-49729, filed on November 30, 2017) pertained to the July 13, 2017 incident. (Doc. 27-3 at 1-3; Doc. 27-4; Doc. 27-5 at 1-3).

Turning to Plaintiff's allegations, while he claims that he timely appealed the denial of Informal Grievance Log No. 573-1707-0102 on a formal grievance document, this assertion is belied by the evidence submitted by Defendants. Moreover, assuming that Plaintiff's allegations are true that he did so and never received a response, the Florida Administrative Code allowed Plaintiff to proceed with the next step in the three-step exhaustion process (i.e., to file an appeal with the Office of the Secretary) after the expiration of the prison's time to respond to a formal grievance. See Fla. Admin. Code § 33-103.011(4) ("[E]xpiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step in the grievance process."). Plaintiff does not allege, nor does the record demonstrate, that he did so. Thus, even if FDOC officials never responded to Plaintiff's formal grievance, Plaintiff has

still not demonstrated that he has exhausted the available administrative procedures. See Turner, 541 F.3d at 1084 (stating that a prison's failure to respond to a formal grievance did not relieve the prisoner of his obligation to file an appeal when the grievance procedure provided that prisoners could file an appeal if they did not receive a response to a formal grievance within 30 days).

Plaintiff's other allegations regarding the FDOC's alleged obfuscation and machinations to make the grievance process unavailable to him (for example, Plaintiff's allegations about his grievances pertaining to the loss of Informal Grievance Log No. 573-1707-0102, the alleged non-response to Formal Grievance Log No. 1711-102-109, and the grievances about unnamed issues filed between November 2017 and April 2018) do not pertain to any grievances that would have been both timely filed as part of the three-step process and relevant to the July 2017 incident. As for Plaintiff's allegations that his property was taken by prison officials and returned with his grievance records missing, Plaintiff does not state when this alleged taking occurred or what grievances exactly went missing and, furthermore, is belied by the documented grievances that Plaintiff himself attached to his complaint.

For these reasons, the Court finds that the facts of this case do not demonstrate that administrative remedies were unavailable to Plaintiff such that his failure to properly exhaust those remedies may be excused. However, in an abundance of caution, the Court will proceed to analyze the merits of Plaintiff's Section 1983 claims. Here, even assuming that Plaintiff properly exhausted his administrative remedies or that he did not need to do so because such remedies were unavailable to him, the complaint is due to be dismissed on the merits.

**II.**      <u>**Deliberate Indifference Claim Against Defendant Batchelor**</u>

To recover under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) a defendant deprived him of a right secured under the U.S. Constitution or federal law; and (2) the deprivation transpired under color of state law. <u>Arlington v. Cobb Co.</u>, 139 F.3d 865, 872 (11th Cir. 1998). Additionally, Section 1983 "requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." <u>Zalter v. Wainwright</u>, 802 F.2d 397, 401 (11th Cir. 1986).

The Eighth Amendment provides a constitutional right against deliberate indifference to the serious medical needs of prisoners. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-05 (1976). A claim for deliberate indifference to serious medical needs requires plaintiffs to demonstrate: (1) an objectively serious medical need; (2) the official subjectively acted with deliberate indifference to the serious medical need; and (3) causation exists between the official's indifference and a plaintiff's injury. <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1306-07 (11th Cir. 2009).

The second element – demonstrating an official's deliberate indifference – requires more than mere negligence. <u>Estelle</u>, 429 U.S. at 106. Instead, deliberate indifference requires that a prison official knows of and disregards an excessive risk to an inmate's health or safety. <u>Farrow v. West</u>, 320 F.3d 1235, 1245 (11th Cir. 2003). The deliberate indifference standard applies to inmates' psychiatric or mental health needs. <u>Greason v. Kemp</u>, 891 F.2d 829, 834 (11th Cir. 1990).

Defendant Batchelor contends Plaintiff failed to demonstrate he suffered an objectively serious medical need. (Doc. 27 at 14-15). A serious medical need has been defined as a

condition "diagnosed by a physician as mandating treatment," a condition "so obvious that even a layperson would easily recognize the necessity," or a condition worsened by delayed treatment. Mann, 588 F.3d at 1307. The condition must be one that, if left unattended, "poses a substantial risk of serious harm." Id.

Here, Plaintiff's alleged psychological emergency falls short of the serious medical need required for a deliberate indifference claim. Plaintiff claims that he told Defendant Batchelor "he needed to speak with his counselor . . . because he was feeling anxious and panicky, and needed help by talking to his counselor or someone to help him through an episode." (Doc. 1 at 8). According to Plaintiff, Defendant Batchelor violated the Eighth Amendment when Batchelor failed to immediately respond to Plaintiff when he declared a psychological emergency. (Id. at 12). Plaintiff, however, made no indication he had a genuine intent to harm himself. (Id. at 9). Instead, Plaintiff went under his bunk to calm himself down. (Id.). Plaintiff has failed to allege facts demonstrating that his mental state required immediate response and treatment or posed a substantial and imminent risk of harm. See, e.g., Robinson v. Larson, No. 3:13-cv-387-LC-CJK, 2017 WL 4128681, at *7 (N.D. Fla. Aug. 31, 2017), report and recommendation adopted, No. 3:13-cv-387-LC-CJK, 2017 WL 4125264 (N.D. Fla. Sept. 18, 2017) (finding plaintiff did not have a serious mental health need because the plaintiff lacked evidence of a genuine intent to harm himself).

Even if there was a serious medical need, Plaintiff has failed to establish the requisite causation between Defendant Batchelor's alleged deliberate indifference and Plaintiff's alleged injury. (Doc. 27 at 15,16). Here, Plaintiff alleges he suffered nightmares plus bruising and pain in his ankle, knee, thigh, and lower back. (Doc. 1 at 11). Plaintiff alleges Defendants

14

Ross and Turner caused his injuries. (Id. at 9). Plaintiff fails to demonstrate how Defendant Batchelor's alleged deliberate indifference caused any of Plaintiff's alleged injuries. Accordingly, the claim against Defendant Batchelor for deliberate indifference is dismissed.

## III.   Official and Individual Capacity Claims

### A.   Official Capacity Claims

Plaintiff brings all claims against Defendants in their official capacities, as employees of the Florida Department of Corrections. (Doc. 1 at 14). An official capacity claim is a claim against the entity of which a defendant is an agent.  See Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694-95 (1978); Barnett v. MacArthur, 956 F.3d 1291, 1296 (11th Cir. 2020). To succeed, a plaintiff must allege the entity's customs, practices or policies were a "moving force" behind the deprivation of a right. Polk Cnty. v. Dodson, 454 U.S. 312, 326 (1981) (quoting Monell, 436 U.S. at 694).

Under the Eleventh Amendment, a state is protected from being sued in federal court without the state's consent. Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003). Absent its consent, a state may not be sued in federal court unless Congress has clearly and unequivocally abrogated the state's Eleventh Amendment immunity. DeKalb Cnty. Sch. Dist. v. Schrenko, 109 F.3d 680, 688 (11th Cir. 1997) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984)). Suits brought against a state in federal court without an explicit abrogation of Eleventh Amendment immunity should be dismissed. Gamble v. Fla. Dep't of Health & Rehab. Servs., 779 F.2d 1509, 1513-16 (11th Cir. 1986).

A lawsuit against a state employee in his official capacity is a suit against the state, for Eleventh Amendment purposes. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989);

Kentucky v. Graham, 473 U.S. 159, 165-166 (1985). The State of Florida has not waived its immunity from suits based upon constitutional civil rights violations. Gamble, 779 F.2d at 1511-18. Accordingly, Plaintiff's claims against Defendants for monetary damages in their official capacities are dismissed.  See Johnson v. Crosby, No. 5:06-cv-92-RS-MD, 2006 WL 8450965, at *6 (N.D. Fla. Oct. 18, 2006) (holding that Section 1983 claims against FDOC official were barred by the Eleventh Amendment).

### B.  Individual Capacity Claims

Defendants argue that all claims against them in their individual capacities are barred by qualified immunity. (Doc. 27 at 19-21). Generally, the doctrine of qualified immunity shields government officials performing discretionary functions from civil liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In the Eleventh Circuit, qualified immunity involves a two-part test. Zeigler v. Jackson, 716 F.2d 847, 849-50 (11th Cir. 1983).  First, a defendant must establish he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. Id. at 849. To determine whether an officer acted within his discretionary authority, a court looks to whether the activities "fell within the employee's job responsibilities." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265-66 (11th Cir. 2004). Next, if a defendant establishes that he acted within the scope of his discretionary authority, the burden shifts to the plaintiff to show a lack of good faith. Zeigler, 716 F.2d at 849. To defeat qualified immunity, a plaintiff must show that "when the defendant acted, the law established the

contours of a right so clearly that a reasonable official would have understood his acts were unlawful." Galvez v. Bruce, 552 F.3d 1238, 1244 (11th Cir. 2008).

Here, Plaintiff alleges that, on July 13, 2017, Defendant Batchelor ignored his request for mental health assistance for approximately 30 minutes. (Doc. 1 at 8-9). Further, Plaintiff alleges that Defendants Turner and Ross roughly pulled Plaintiff out from underneath his bunk, causing him pain and injuries. (Id. at 9-10). Under the totality of the circumstances, Defendants here were carrying out their official job duties when they responded to Plaintiff's proclaimed psychological emergency while he was incarcerated at Zephyrhills C.I. Seeking to respond to an inmate who had covered the CCTV monitors with toilet paper and was crying and hiding under his bunk fell within their responsibilities as FDOC employees. The burden therefore shifts to Plaintiff to show a lack of good faith.

As the Eleventh Circuit has explained, this part of the qualified-immunity analysis is a two-part test. Vinyard v. Wilson, 311 F.3d 1340, 1346–47 (11th Cir. 2002). First, courts must determine whether the plaintiff's allegations, if true, establish a constitutional violation. Id. at 1346 (citing Hope v. Pelzer, 536 U.S. 730 (2002)). If a constitutional right would have been violated under the plaintiff's version of the facts, "the next, sequential step is to ask whether the right was clearly established." Id.  Thus, the Court will first analyze whether each officer's conduct violated Plaintiff's constitutional rights.

### 1.  Deliberate Indifference Claim Against Batchelor

Plaintiff's allegations fail to demonstrate an Eighth Amendment constitutional violation of deliberate indifference to a serious medical need for the reasons previously stated.

17

Accordingly, Plaintiff's deliberate indifference claim against Defendant Batchelor is barred by the doctrine of qualified immunity.

### 2.   Excessive Force Claim Against Defendants Ross and Turner

In the Eleventh Circuit, the defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment. Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002). "The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment." Id. Here, Plaintiff has not done so.

When a prison employee is accused of excessive force, the inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6 (1992).   A claim for excessive force requires a plaintiff to establish a defendant acted with the subjective intent to use force maliciously and sadistically to cause harm. Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999). To determine whether force was applied maliciously and sadistically, the Supreme Court outlines five factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." Id. (citing Whitley v. Albers, 475 U.S. 312, 321 (1986)). In considering the above factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S.

18

at 321. In addition, a plaintiff's allegations must establish an objective component, which requires a plaintiff to prove a requisite amount of force was used against him. Smith v. Vavoulis, 373 F. App'x 965, 966 (11th Cir. 2010). Thus, the Eighth Amendment generally will not cover *de minimis* uses of physical force. Id.

Here, Plaintiff has failed to allege that Defendants Ross and Turner had the subjective intent to apply force maliciously and sadistically when removing Plaintiff from beneath his bunk. First, the extent of Plaintiff's injuries was minimal. Plaintiff alleges he suffered from nightmares, bruises, and pain in his ankle, knee, thigh, lower back for weeks after the incident. (Doc. 1 at 11). Plaintiff does not allege his injuries required medical treatment. Plaintiff does not allege his injuries were permanent or took a significant time to heal. See McBride v. Rivers, 170 F. App'x 648, 657 (11th Cir. 2006) (explaining that when a plaintiff alleges injuries did not require medical treatment, and the injury was not permanent or required long healing periods, the severity of injury may be minimal).

Second, the application of force was objectively necessary. Defendants Ross and Turner, at the order of Defendant Batchelor, removed Plaintiff from his cell for declaring a psychological emergency, hiding under a bunk, and covering the CCTV monitor with toilet paper. (Doc. 1 at 9). In the Eleventh Circuit, "[p]rison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (quoting Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir.1990)). Furthermore, a court should give a "wide range of deference to prison officials acting to preserve discipline and security." Id. Defendants'

decision to use force while trying to remove Plaintiff from under his bunk falls within the deference given to officials in Defendants' position.

Third, the relationship between the need for and amount of force was reasonable. Plaintiff alleges Defendant Turner used both hands to grab and twist Plaintiff's left ankle, and slammed Plaintiff's left thigh into the bottom of the bunk. (Doc. 1 at 9). Plaintiff alleges Defendant Ross then grabbed and pulled Plaintiff's right ankle. (Id. at 10). The amount of force used by Defendants Ross and Turner was reasonable and limited to the extent Defendants needed to remove Plaintiff from hiding under his bunk. See Nasseri v. City of Athens, 373 F. App'x 15, 18 (11th Cir. 2010) (guards are "permitted to use some force in controlling the situation and preventing it from escalating."); e.g. McBride, 170 F. App'x at 656-57 (finding guards who repeatedly punched the inmate in the back of the head, on his back, on his left side, and also kneed the inmate in the face four to six times, did not use excessive force). Overall, the relationship between the need and the amount of force was reasonable.

Fourth, based on the facts known to them, it was reasonable for Defendants to perceive a threat to safety. Plaintiff's allegations establish Plaintiff declared a psychological emergency, covered the CCTV monitor in his cell with toilet paper, and hid under his bunk while crying and rocking back and forth. (Doc. 1 at 8-9). Under these facts, it was reasonable for Defendants Ross and Turner to perceive a threat to the safety of staff, inmates, and Plaintiff himself. See Mixon v. Mosley, No. 2:06-cv-342-MHT, 2009 WL 1116617 at *5, 8-9 (M.D. Ala. 2009) (guards perceived a threat to safety when they could not see inside of inmate's cell and the defendant was afraid plaintiff might be causing harm to himself).

20

Here, even construing the facts in the light most favorable to Plaintiff, the factors weigh in favor of the conclusion that Defendants Ross and Turner applied force in a good-faith effort to maintain or restore discipline, and not maliciously and sadistically to cause harm. Accordingly, Plaintiff's excessive force claims against Defendants Ross and Turner are dismissed.

### 3. First Amendment Retaliation Claims Against Defendants Ross and Turner

While Plaintiff did not cite the First Amendment in his complaint, Plaintiff's allegations may be read broadly to allege claims of retaliation against Defendants Ross and Turner in response to Plaintiff's exercising his First Amendment rights. (Doc. 8 at 5-6). A retaliation claim requires a plaintiff to establish: "(1) that his speech was constitutionally protected; (2) that the defendant's retaliatory conduct adversely affected protected speech; and (3) there is a causal connection between retaliatory actions and adverse effect on speech." Pittman v. Tucker, 213 F. App'x 867, 870 (11th Cir. 2007) (citing Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005)). A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of his First Amendment rights. Id. (citing Bennett, 423 F.3d at 1254). Causal connection requires evidence of a retaliatory motive. See Gattis v. Brice, 136 F.3d 724, 726 (11th Cir. 1998). At the motion to dismiss stage, the subjective motivation requirement is satisfied if a plaintiff identifies a sequence of events from which a retaliatory motive can be inferred. Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 911 (11th Cir. 2010).

Here, Plaintiff alleges that "[d]ue to the numerous grievances Plaintiff submitted at Zephyrhills C.I. about the mistreatment, abuse, and injustices that were happening there, the

Defendants retaliated against [him] with false [disciplinary reports], taunts, and the [July 13, 2017] use of force, and the denial of mental health / psychological emergencies." (Doc. 1 at 10-11). Here, the complaint fails to set forth a plausible causal connection between the alleged retaliation and Plaintiff's protected activity of filing grievances. The complaint makes only conclusory allegations of a retaliatory motive and Plaintiff does not allege facts sufficient to raise his conclusions above the speculative level. Compare Taylor v. Crews, No. 4:14-cv-98–MW/CAS, 2015 WL 5042721, at *7-8 (N.D. Fla. July 27, 2015), report and recommendation adopted, 2015 WL 5042805 (N.D. Fla. Aug. 26, 2015) (finding allegations were sufficient where plaintiff alleged an incident where he was yelled at for filing a grievance and then Defendant did not permit Plaintiff to eat breakfast). Accordingly, any First Amendment claim arguably raised in the complaint against Defendants Ross and Turner fails.

## Conclusion

For the reasons explained above, all of Plaintiff's claims are due to be dismissed and, moreover, Plaintiff has failed to exhaust his available administrative remedies. Because exhaustion is a mandatory precondition to filing suit, failure to fulfill this requirement mandates dismissal. See Woodford, 548 U.S. at 84; Wilkinson, 544 U.S. at 84. Moreover, due to the structure of the Florida exhaustion requirements, which requires the first step of the process to be completed within 20 days of the alleged incident, there is no way for Plaintiff to cure the deficiency at this late date. Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) ("[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."); Smith v. Hartmeyer, No. 6:18-cv-119, 2021 WL 2123919, at *2 (S.D. Ga. Apr. 27, 2021), report and

recommendation adopted, No. 6:18-cv-119, 2021 WL 2117055 (S.D. Ga. May 25, 2021) ("An incarcerated individual cannot 'cure' an exhaustion defect by properly exhausting all remedies after filing suit.").

Therefore, while it is the general rule in this Circuit that *pro se* plaintiffs should be given a chance to amend their complaint before dismissal with prejudice, Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001), amendment would be futile here. See Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."); see also Reyle v. Clay Cty. Jail, No. 3:18-cv-522-MMH-JRK, 2018 WL 2197782, at *2 (M.D. Fla. May 14, 2018) (dismissing complaint and finding amendment would be futile given the inmate's failure to exhaust his administrative remedies and failure to set forth a cognizable claim under Section 1983).

Accordingly, it is **ORDERED** that:

1. Defendants' Motion to Dismiss (Doc. 27) is **GRANTED**.

2. Plaintiff's Complaint (Doc. 1) is **DISMISSED without leave to amend.**

3. The Clerk is directed to **CLOSE THE CASE.**

**DONE** and **ORDERED** in Tampa, Florida on this 14th day of September, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE